# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MALL AT POTOMAC MILLS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:14-cv-00099-TWP-TAB |
| CONTROL BUILDING SERVICES, INC., | ) |
| Defendant. | ) |

## ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Mall at Potomac Mills, LLC's ("Potomac Mills") Motion for Summary Judgment ([Filing No. 33](#)). After validly terminating its service agreement with Control Building Services, Inc. ("CBS"), Potomac Mills inadvertently paid CBS unearned payments totaling $305,947.88, to which CBS was not entitled. Potomac Mills requested return of the inadvertent, unearned payments, and CBS refused. Potomac Mills then initiated this lawsuit and moved for summary judgment, asserting that there is no dispute that CBS is not entitled to retain the $305,947.88, and Potomac Mills is entitled to recoup the payments. For the following reasons, Potomac Mills's Motion for Summary Judgment is **GRANTED**.

## I.   BACKGROUND

Potomac Mills and CBS entered into a contract effective March 1, 2009, whereby CBS was to provide janitorial services to Potomac Mills at its mall in Virginia through the end of 2009. For providing the janitorial services, CBS was to be paid $805,738.10, payable in ten monthly installments of $80,573.81. CBS paid Potomac Mills $4,086.84 each month as rent for the use of physical space at the mall in Virginia. The parties referred to this rent as "Minimum Rent," and the amount of rent was subtracted from the monthly payments made by Potomac Mills to CBS.

Because of this rent payment reduction, the net monthly payment from Potomac Mills to CBS was $76,486.97.

Pursuant to a renewal provision in the parties' contract, the contract for janitorial services was automatically renewed on the same terms through August 31, 2012. Potomac Mills exercised its contractual right to terminate the contract by giving a thirty-day written notice to CBS. This written termination notice was given on August 1, 2012, and the termination was effective August 31, 2012. Because of the termination, CBS stopped providing janitorial services to Potomac Mills on August 31, 2012.

Even though CBS had stopped providing janitorial services to Potomac Mills in August, it received and retained payments from Potomac Mills for the months of September, October, November, and December 2012, in the amount of $76,486.97 per month, totaling $305,947.88. Potomac Mills was unaware that these inadvertent and unearned payments were being made to CBS. When it discovered the erroneous payments, Potomac Mills ceased further payments and demanded that CBS return the funds. Despite Potomac Mills's requests, CBS refused to return the unearned payments.

The contract specified that CBS was "entitled to receive payment only for services approved and agreed upon by [Potomac Mills] in writing, in advance, and actually performed and rendered according to the terms and conditions herein provided." (Filing No. 1-1 at 12, paragraph 9.) The contract was properly terminated in August 2012. No services were approved and agreed upon by Potomac Mills in writing for the months of September, October, November, and December 2012. CBS did not actually perform or render any services to Potomac Mills during these four months. Thus, CBS was not entitled to receive any payments during the four months.

The contract between the parties also provided for an award of attorney fees and costs to Potomac Mills in the event of a dispute arising out of the contract. "If [Potomac Mills] is required to bring or defend any action arising out of this Agreement, or to enforce or defend the provisions hereof, [Potomac Mills] shall recover its reasonable attorney's fees and costs from [CBS]." ([Filing No. 1-1 at 12](), paragraph 11.)

Because of CBS's refusal to return the unearned payments, on December 2, 2013, Potomac Mills filed a complaint against CBS in the Marion Superior Court (Indiana). The complaint asserts claims for breach of contract, restitution for payments made under a mistake of fact, "money had and received," and unjust enrichment. CBS was served on December 23, 2013. CBS then removed the action to this Court on January 21, 2014, based on diversity jurisdiction.

On February 14, 2014, CBS filed its answer to Potomac Mills's complaint, and the parties filed their joint Case Management Plan on April 15, 2014. Shortly thereafter, counsel to CBS filed a motion to withdraw its attorney appearance on behalf of CBS (Filing No. 26). The Court granted the motion to withdraw and ordered CBS to secure new counsel by July 17, 2014 ([Filing No. 27]()). As a corporation, CBS cannot represent itself in federal court. CBS did not secure new counsel by July 17, 2014, as required by the Court, and still has not retained counsel. Additionally, CBS failed to file its preliminary witness and exhibit lists as required by the Case Management Plan and failed to appear for the Court's August 11, 2014 status conference. CBS also failed to file a response brief or designate evidence in opposition to Potomac Mills's Motion for Summary Judgment.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

3

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (internal citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (internal citations and quotation marks omitted).

Furthermore, Local Rule 56-1(b) requires the non-movant to include a "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." Local Rule 56-1(f)(1)(A) states that the Court will assume that the "facts as claimed and supported by admissible evidence by the movant are admitted without controversy except to the extent that . . . the non-movant specifically controverts the facts in that party's 'Statement of Material Facts in Dispute' with admissible evidence[.]"

Additional legal principles guide the Court's decision to grant Potomac Mills's Motion for Summary Judgment. "[C]orporations are 'legally incapable of appearing in court unless represented by counsel.'" *Gilman v. Hamilton Accounts Servs.*, 2013 U.S. Dist. LEXIS 147263, at *1 (S.D. Ind. Oct. 11, 2013) (quoting *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011)). "Therefore, 'corporations must appear by counsel or not at all.'" *Id.* "[I]t is well-established that a non-lawyer cannot represent or appear on behalf of a corporation in federal court . . . even when the person seeking to represent the corporation is its president." *Gilman*, 2013 U.S. Dist. LEXIS 147263, at *1 (quoting *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 n.4 (7th Cir. 1986)).

"The usual course when a litigant not entitled to litigate *pro se* loses its lawyer in the midst of the case is to give it a reasonable opportunity to find a new one, and, if it fails, either to dismiss the case or enter a default judgment." *United States v. Hagerman*, 549 F.3d 536, 538 (7th Cir. 2008) (internal citations omitted). CBS was ordered and given time to obtain new counsel, but it has failed to do so nearly seven months later.

### III. DISCUSSION

As an initial matter, because this action is brought under the Court's diversity jurisdiction, the Court applies the substantive law of Indiana, the forum state, in deciding this Motion for Summary Judgment. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.2d 630, 634 (7th Cir. 2001). The most likely jurisdictions for this case based on the "most intimate contacts" are Indiana (where much of Potomac's contract execution occurred), Virginia (where much of CBS's contract execution occurred), and New Jersey (where CBS is operated). *See Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983) (Indiana's choice of law rule applies the "most intimate contacts" approach). Among these three potential forums, there are no conflicts in the

5

basic principles for resolving contract disputes as each state uses the same standards and applies the "four corners doctrine" to contract disputes. *Compare Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 613–14 (Ind. Ct. App. 2000); *with PMA Capital Ins. Co. v. US Airways, Inc.*, 626 S.E.2d 369, 372–73 (Va. 2006); *and Farrell v. Janik*, 542 A.2d 59, 62 (N.J. Super. Ct. Law Div. 1988).

Regarding the choice of law to apply in deciding the claims for equitable relief, the Court first must determine if there is a conflict among the states' laws regarding the equitable claims. If there is a conflict that could affect the outcome of the litigation, then the Court will apply "the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). If there is no conflict, the law of the forum state will be applied. *Id.* at 804–05; *Loos*, 738 F. Supp. at 324. The laws governing the equitable claims in this case are substantially similar in Indiana, Virginia, and New Jersey. *Compare Huff v. Biomet*, 654 N.E.2d 830, 837 (Ind. Ct. App. 1995) (money had and received); *Time Warner Entm't Co., L.P. v. Whiteman*, 802 N.E.2d 886, 890 (Ind. 2004) (payment under mistake of fact); *Inlow v. Inlow*, 797 N.E.2d 810, 816 (Ind. Ct. App. 2003) (unjust enrichment); *with Rivanna Solid Waste Auth. v. Van Der Linde*, 78 Va. Cir. 418, 424–25 (Va. Cir. Ct. 2009) (money had and received); *Mayor of Richmond v. Judah*, 32 Va. 305, 318 (Va. 1834) (payment under mistake of fact); *R.M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404, 407 (Va. Cir. Ct. 2008) (unjust enrichment); *and Franklin v. Jones*, 90 A. 1010, 1011 (N.J. 1914) (money had and received); *New Jersey Hosp. Ass'n v. Fishman*, 661 A.2d 842, 849 (N.J. Super. Ct. App. Div. 1995) (payment under mistake of fact); *County of Essex v. First Union Nat. Bank*, 862 A.2d 1168, 1172 (N.J. Super. Ct. App. Div. 2004) (unjust enrichment). Because the states' laws are substantially similar, the Court will apply Indiana law to the equitable claims.

A.  **Breach of Contract Claim**

Potomac Mills bases its breach of contract claim on its inadvertent payment of $76,486.97 to CBS in September, October, November, and December 2012, totaling $305,947.88, and CBS's refusal to return the funds despite not performing any services for the payments and the lack of advance written approval of any services by Potomac Mills. As stated earlier, CBS provided janitorial services to Potomac Mills from March 1, 2009 to August 31, 2012 pursuant to a contract entered into by the parties, in exchange Potomac Mills paid CBS $76,486.97 each month. The parties' contract specified that CBS was "entitled to receive payment only for services approved and agreed upon by [Potomac Mills] in writing, in advance, and actually performed and rendered according to the terms and conditions herein provided." (Filing No. 1-1 at 12, paragraph 9.) The contract was terminated by Potomac Mills by its August 1, 2012 letter to CBS. The termination was effective August 31, 2012. Thereafter, Potomac Mills did not agree upon or approve any services of CBS, and CBS did not actually perform or render any services to Potomac Mills after August 31, 2012.

The breach of contract claim fails as a matter of law because Potomac Mills terminated the contract, effective August 31, 2012, thereby relieving CBS of any obligations under the contract after that date. "The termination or cancellation of a contract differs from a breach of contract. When a contract is terminated, neither party owes any further duties or obligations to the other." *Orthodontic Affiliates, P.C. v. Long*, 841 N.E.2d 219, 222 (Ind. Ct. App. 2006) (citing *Mortgage Credit Serv., Inc. v. Equifax Credit Info. Serv., Inc.*, 766 N.E.2d 810, 813 (Ind. Ct. App. 2002)). After August 31, Potomac Mills was not obligated to pay CBS, and CBS was not obligated to provide services or seek prior written approval for services. Because of Potomac Mills's termination of the contract, CBS could not breach the contract after August 31, 2012.

Potomac Mills asserts that CBS "was not entitled to any payment for September, October, November, and December of 2012, and its refusal to return the Payments is a breach of the Contract." Potomac Mills relies on *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind. 2004), and explains that there, the court held that because compensation rights vest when services are rendered, compensation terms in a contract survive the termination of the contract absent unambiguous intent to the contrary. ([Filing No. 34 at 7](Filing No. 34 at 7).)

But the holding in *Highhouse* is not helpful to Potomac Mills because the opposite situation—payments made even though no services were rendered—does not necessarily lead to the same result—a breach of contract. There, the employee provided services during his employment. The employer was to pay a bonus to the employee when the employer collected on his services. The employee resigned his position with the employer, and after the resignation, the employer continued to collect on the employee's previously provided services. The employer refused to pay the contractually-owed bonus when it collected on the employee's services after his resignation.

The court determined that "when an employer makes an agreement to provide compensation for services, the employee's right to compensation vests when the employee renders the services." *Highhouse*, 807 N.E.2d at 739. The employer was required to pay the bonus even after the employee's resignation because the right to the bonus vested when the employee rendered the service. This simply means that if compensation is owed after the termination of the contract, the ending of the contract does not relieve the payor of the obligation to make payments. That court's holding does not demand, as Potomac Mills suggests, that all compensation terms in a contract survive the termination of the contract.

While CBS did not have a right to the payments made after August 2012, its receipt and refusal to return the payments was not a "breach" of the "contract". CBS could not breach the compensation and services provisions of the contract after August 31, 2012 because Potomac Mills had terminated the contract.

B.  **Equitable Claims**

As an alternative to its breach of contract claim, Potomac Mills also requested the return of the inadvertent, unearned payments under three equitable claims: "money had and received," payment under a mistake of fact, and unjust enrichment. While each of these equitable remedies is a distinct claim, they are similar in nature, and each claim results in awarding Potomac Mills the return of the unearned payments made to CBS.

> Under Indiana law, a claim for "money had and received" is an
>
> equitable remedy that lies in favor of one person against another, when that other person has received money either from the plaintiff himself or third persons, under such circumstances that in equity and good conscience he ought not to retain the same, and which money, *ex aequo et bono*, belongs to the plaintiff, and where money has been received by mistake of facts, or *without consideration*, or upon a consideration that has failed, it may be recovered back.

*Huff*, 654 N.E.2d at 837 (quoting *Pufahl v. Nat. Bank of Logansport*, 154 N.E.2d 119, 120 (Ind. Ct. App. 1958)). Similarly, a claim of payment under a mistake of fact entitles the payor to recover the money paid when the payment was made under a mistake of fact, and which the payor was under no legal obligation to make, "notwithstanding a failure to employ the means of knowledge which would disclose a mistake." *Time Warner Entm't Co.*, 802 N.E.2d at 890.

"To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Inlow*, 797 N.E.2d at 816 (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)).

9

Under each of these claims for equitable relief, the undisputed facts in this case unequivocally show that Potomac Mills is entitled to recover the payments it made to CBS in September, October, November, and December 2012. Potomac Mills mistakenly paid the unearned payments to CBS after the contract was terminated and after CBS had ceased providing janitorial services to Potomac Mills. With the termination of the contract, Potomac Mills was not legally obligated to provide payments to CBS after August 2012. CBS, which admittedly had not provided any services to Potomac Mills in consideration of the payments, retained the unearned payments after Potomac Mills requested their return. CBS knew that it had not provided any services to Potomac Mills to earn the payments, and it knew that the contract had been terminated. CBS's conduct was inequitable. CBS retained the payments, money that belonged to Potomac Mills, money that CBS received because of Potomac Mills's mistake of fact, for no consideration. CBS received a measurable benefit under such circumstances that CBS's retention of the benefit without payment would be unjust. Equity demands the return of the inadvertent, unearned payments to Potomac Mills under each of the equitable claims.

**C.      Pre-judgment Interest, Post-judgment Interest, and Attorney Fees and Costs**

Potomac Mills requested pre-judgment and post-judgment interest on its damages award. Post-judgment interest is granted to Potomac Mills consistent with 28 U.S.C. § 1961. An award of pre-judgment interest is a separate consideration.

> In diversity actions, federal courts must look to state law to determine the propriety of awarding prejudgment interest. In Indiana, prejudgment interest is available when damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time damages accrue, but is not appropriate when the trier of fact must use its best judgment to assess the amount of damages. The underlying purpose of awarding prejudgment interest on compensatory damages is to make the wronged party whole by compensating that party for being deprived of the money prior to judgment.

*Dale R. Horning Co. v. Falconer Glass Industries, Inc.*, 730 F. Supp. 962, 969 (S.D. Ind. 1990) (internal citations omitted). The damages sustained by Potomac Mills in this case are readily ascertainable and do not require a trier of fact to use its best judgment in assessing the amount of damages. The amount of damages sustained by Potomac Mills is $305,947.88, the amount it inadvertently paid to CBS, which CBS refused to return. Thus, an award of pre-judgment interest is appropriate in this case. Pre-judgment interest will be awarded at the same rate as post-judgment interest, which is set by 28 U.S.C. § 1961.

Potomac Mills also requested its attorney fees and costs pursuant to the parties' contract. "Indiana law governs the issue [of attorney fees] in this diversity case. Under Indiana law, . . . as 'a general rule, a contract for attorneys' fees is enforceable according to its terms unless contrary to law or public policy.'" *Allied Enters., Inc. v. Exide Corp.*, 2002 U.S. Dist. LEXIS 4553, at *2–3 (S.D. Ind. Jan. 15, 2002) (quoting *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 481 (Ind. App. 2000)). The plain language of the contract between the parties states, "If [Potomac Mills] is required to bring or defend any action arising out of this Agreement, or to enforce or defend the provisions hereof, [Potomac Mills] shall recover its reasonable attorney's fees and costs from [CBS]." ([Filing No. 1-1 at 12](), paragraph 11.) This action "arises out of" the contract between the parties. Therefore, an award of attorney fees and costs is appropriate in this case.

## IV. <u>CONCLUSION</u>

Potomac Mills designated evidence and pleadings that show there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law on its claim for equitable relief to recoup the inadvertent, unearned payments made to CBS. As such, summary judgment is appropriate as a matter of law.

Potomac Mills's Motion for Summary Judgment ([Filing No. 33](#)) is **GRANTED** in favor of Potomac Mills and against CBS on the claims for equitable relief.

CBS is **ORDERED** to pay Potomac Mills an award of damages in the amount of $305,947.88. Potomac Mills is granted pre-judgment and post-judgment interest on its damages award. Pursuant to the parties' contract, Potomac Mills also is awarded its attorney fees and costs incurred in this action. Potomac Mills is **ORDERED** to file an accounting of its reasonable attorney fees and costs within fourteen (14) days of the date of this Order. Thereafter, a separate and final judgment will be entered.

**SO ORDERED.**

Date: 01/22/2015

_Tanya Walton Pratt_
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alex E. Gude
BINGHAM GREENEBAUM DOLL LLP
agude@bgdlegal.com

Carl A. Hayes
BINGHAM GREENEBAUM DOLL LLP
chayes@bgdlegal.com

Edward Turen, Chairman
Control Building Services, Inc.
333 Meadowlands Parkway, Suite 100
Secaucus, New Jersey 07094

Corporation Service Company
Registered Agent for
Control Building Services, Inc.
830 Bear Tavern Rd.
West Trenton, New Jersey 08628